UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SEAN MICHAEL RYAN,

       Petitioner,

v.                                                            Case No. 14-cv-11611

ROBERT NAPEL,                                   Honorable Linda V. Parker

       Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

## I.  INTRODUCTION

Michigan prisoner Sean Michael Ryan ("Petitioner") has filed a pro se

habeas corpus petition challenging his state convictions for seven counts of first-

degree criminal sexual conduct.  *See* Mich. Comp. Laws § 750.520b(1)(a) (sexual

penetration of a person under the age of thirteen).  Petitioner alleges as grounds for

relief that:  (1) the state courts deprived him of due process by denying his requests

for an evidentiary hearing; (2) appellate counsel was ineffective for failing to raise

stronger claims on direct appeal; (3) trial counsel's omissions deprived him of

effective assistance; (4) the police delayed his arraignment to obtain additional

information justifying his arrest; (5) the prosecutor relied on perjured testimony;

(6) the prosecution suppressed exculpatory evidence; (7) the police destroyed or

failed to preserve exculpatory video evidence; (8) his arrest was not supported by probable cause; (9) the trial court erroneously admitted his partially videotaped statement to the police; (10) the cumulative effect of errors resulted in an unfair trial; (11) he is actually innocent of the crimes for which he is incarcerated; and (12) the Court should grant leave to amend the petition if he raises additional claims. Respondent Robert Napel argues in an answer to the petition that several of Petitioner's claims are not cognizable on habeas review and that the state courts' decisions on Petitioner's other claims were neither contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, nor unreasonable determinations of the facts. The Court agrees. Accordingly, the Court is denying Petitioner habeas petition relief.

## II.    BACKGROUND

Petitioner was charged in Saginaw County, Michigan with nine counts of first-degree criminal sexual conduct involving his eleven-year-old daughter. The Michigan Court of Appeals summarized the evidence at Petitioner's jury trial in Saginaw County Circuit Court as follows:

> On March 1, 2010, the police were notified by local school personnel that a student had made allegations that her father, defendant, had sexually abused her on various occasions. The police met with defendant at the school, then transported him to the police department for questioning. Meanwhile, a detective took the victim to a local abuse and neglect center for purposes of a forensic interview. At the police department, defendant signed a form indicating that he

understood and waived his Miranda[1] rights.  He provided the police with the addresses of four properties that he owned, and defendant consented to a search of those locations.

In an initial police interview on March 1, defendant denied ever having sexual contact with his daughter.  The interview was recorded, but a computer failure or human error resulted in the data or recording being lost.  Defendant was then transported to the county jail.  The next day, March 2, detectives went to the county jail with the intention of interviewing defendant once again.  However, the detectives decided not to interview defendant because he complained of a lack of sleep.  Defendant was again interviewed by police on March 3, 2010, and the interview was recorded and played for the jury.  During the interview, defendant confessed to engaging in numerous instances of sexual contact and penetration with his daughter, including vaginal and anal intercourse, as well as fellatio and cunnilingus.[2]  The trial court denied defendant's pretrial motion to suppress the confession ….

The victim testified that she was 12 years old at the time of trial and that she had stopped living with her mother and went to live with her father in 2009 at a house in Saginaw that he shared with his wife (the victim's stepmother) and the victim's two half-brothers.  The victim indicated that her stepmother went to Mississippi for a wedding sometime in June 2009, leaving defendant to care for her and her brothers.  Shortly after her stepmother left, defendant called the victim into his bedroom and demanded that she remove all of her clothing.  She testified that defendant put his penis in her vagina and thereafter placed his penis in her mouth, leading to ejaculation.  The victim was 11 years old at the time.  The act of vaginal intercourse and the act of

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

[2] [O]n March 3, 2010, there were actually two interviews of defendant by police.  A detective conducted an initial interview in which defendant allegedly confessed to sexually abusing his daughter; however, while this interview was successfully videotaped, the volume for the audio was turned down, so the recording was silent.  The detective discovered the problem and then conducted a second interview, which was successfully recorded and played for the jury.

fellatio in this first episode or transaction gave rise to counts 3 and 9 of the information charging CSC-1. Defendant's daughter testified that he continued to engage in various acts of sexual contact and penetration with her after the initial incident and that the sexual abuse occurred numerous times at the various properties owned by defendant.

The victim stated that on February 28, 2010, her stepmother and brothers were gone from the house and defendant wanted her to remove her clothing, but she refused and climbed under her bed. She testified that defendant took his belt off and started swinging it under the bed, striking her once on the leg. The next day at school the victim told the school counselor about the sexual abuse.

Defendant took the stand and denied any sexual contact with his daughter, suggesting that she had made it all up in an effort to return to her mother out of state. Defendant testified that his confession was false and resulted from being deprived of medical attention and his pain medications as well as threats that his sons would be taken away from his wife and put in foster care.

*People v. Ryan*, 819 N.W.2d 55, 58-59 (Mich. Ct. App. 2012) (footnotes in original as notes 2 and 3).

The trial court granted Petitioner's motion for a directed verdict of acquittal as to count two (sexual penetration with a vibrator), and on November 5, 2010, the jury acquitted Petitioner of count one (sexual penetration with a vibrator). On the same date, the jury found Petitioner guilty of the seven remaining counts of criminal sexual conduct in the first degree.

On December 14, 2010, the trial court sentenced Petitioner to imprisonment for twenty-five to fifty years for each count of criminal sexual conduct. The court

4

ordered the sentences to run concurrently, with the exception of count nine, which the court ordered to run consecutively to count three.[3]

Through counsel, Petitioner filed a direct appeal, arguing that the trial court erred by denying his motion to suppress his confession and by ordering consecutive sentences. Petitioner raised several other claims in a supplemental pro se brief. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences after concluding "that the trial court correctly interpreted and applied MCL 750.520b(3) with respect to consecutive sentencing, that the court did not err by denying defendant's motion to suppress his confession, and that the remainder of defendant's appellate arguments lack merit." *Ryan*, 819 N.W.2d at 58. On October 4, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Ryan*, 820 N.W.2d 918 (Mich. 2012).

Petitioner raised multiple claims in a motion for relief from judgment, which the trial court denied. The trial court stated that all of Petitioner's claims, except for his claim about appellate counsel, were raised on direct appeal. The court determined that it was precluded from adjudicating the claims Petitioner raised on

---

[3]Pursuant to Mich. Comp. Laws § 750.520b(3), a state sentencing court "may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

direct appeal and that the claim about appellate counsel lacked merit. *See* Op. and

Order Den. Def.'s Mot. for Relief from J., *People v. Ryan*, No. 10-034589-FC,

(Saginaw Cty. Cir. Ct. Dec. 13, 2012), ECF No. 48-12.

Petitioner appealed the trial court's decision, but the Michigan Court of

Appeals denied leave to appeal because Petitioner failed to establish entitlement to

relief under Michigan Court Rule 6.508(D). *See People v. Ryan*, No. 315897

(Mich. Ct. App. Nov. 1, 2013), ECF No. 48-15. On February 28, 2014, the

Michigan Supreme Court denied Petitioner leave to appeal for the same reason.

*See People v. Ryan*, 843 N.W.2d 521 (Mich. 2014). On April 17, 2014, Petitioner

filed his habeas petition.

## III. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v.*

*Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a

state prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

7

decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

" 'In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence'.  28 U.S.C. § 2254(e)(1)."  *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   ANALYSIS

### A.   Claim One: Denial of an Evidentiary Hearing

Petitioner alleges that the state courts deprived him of his right to due process and his right to present a complete defense by denying or ignoring his requests for evidentiary hearings to establish a factual record.  Petitioner contends that, if he had been granted an opportunity to develop the record, his illegally

obtained statement would have been suppressed, he would have received a new

trial, and he probably would have been found not guilty.

The record before the Court reveals that the trial court conducted an

evidentiary hearing on Petitioner's motion to suppress his statement to the police.

(*See* 10/28/10, 10/29/10 & 11/2/10 Hr'g Trs., ECF Nos. 48-3, 48-4 & 48-5.)  As

for the failure to grant an evidentiary hearing on Petitioner's post-conviction

motions for a new trial and relief from judgment, Petitioner's claim lacks merit

because

> the Sixth Circuit has consistently held that errors in post-conviction
> proceedings are outside the scope of federal habeas corpus review.
> *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v.
> Baker*, 316 F.3d 557, 571 (6th Cir. 2002) . . . .  [C]laims challenging
> state collateral post-conviction proceedings "cannot be brought under
> the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the
> essence of habeas corpus is an attack by a person in custody upon the
> legality of that custody, and . . . the traditional function of the writ is
> to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 . . . .
> A due process claim related to collateral post-conviction proceedings,
> even if resolved in a petitioner's favor, would not "result [in] . . .
> release or a reduction in . . . time to be served or in any other way
> affect his detention because we would not be reviewing any matter
> directly pertaining to his detention." *Kirby*, 794 F.2d at 247. . . .
> Accordingly, [the Sixth Circuit has] held repeatedly that "the scope of
> the writ [does not] reach this second tier of complaints about
> deficiencies in state post-conviction proceedings," noting that "the
> writ is not the proper means" to challenge "collateral matters" as
> opposed to "the underlying state conviction giving rise to the
> prisoner's incarceration." *Id*. at 248, 247 . . . .

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  Furthermore,

it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented. States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.

. . . [Federal courts] must instead presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim – resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both.

*Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 1174 (2015). For the reasons given by the Sixth Circuit in *Cress* and *Good*, Petitioner's challenge to the state trial court's post-conviction procedures is not cognizable on habeas corpus review.

### B. Claim Four: Delay in the Arraignment[4]

Petitioner claims the police intentionally delayed his arraignment for four days to obtain additional information justifying his arrest. According to Petitioner, the police arrested him without a warrant on March 1, 2010, obtained a warrant on March 4, 2010, and finally brought him before a magistrate for an arraignment on March 5, 2010. Petitioner contends that this procedure violated his rights under the Fourth Amendment to the United States Constitution and required suppression of any evidence collected as a result of the constitutional violation.

---

[4]The Court finds it more convenient to address claims two and three, regarding trial and appellate counsel, later in this opinion.

Petitioner's Fourth Amendment claim is not cognizable here, because the Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (internal footnote omitted). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good*, 729 F.3d at 639. "Michigan provide[s] an adequate avenue to raise a Fourth Amendment claim," *Hurick v. Woods*, No. 16-1554, 2016 WL 7093988, at *3 (6th Cir. Dec. 5, 2016), and Petitioner has failed to show that his claim was frustrated by a failure in Michigan's mechanism for reviewing Fourth Amendment claims.

Even if cognizable here, the record does not support Petitioner's claim that the police intentionally delayed the arraignment to gather additional information justifying his arrest. The police searched Petitioner's properties and received a report concerning the complainant's forensic examination on the same day they arrested Petitioner, and Petitioner confessed to the crimes on the morning of March 3, 2010, less than 48 hours after his arrest.

Although it is not clear from the record why Petitioner was not arraigned until March 5, 2010, "delay in arraignment, standing alone, without a showing of prejudice . . . present[s] no federal question." *Streeter v. Craven*, 418 F.2d 273, 274 (9th Cir. 1969); *see also Stevens v. Berghuis*, No. 13-13268, 2016 WL 704966 at *5 (Feb. 23, 2016) (citing *Kirkland v. Maxwell*, 396 F.2d 687, 688 (6th Cir. 1966) (rejecting the petitioner's habeas claim of illegal delay in arraignment because he failed to show any prejudice resulting from the delay)). Petitioner's confession was not the fruit of the delay, because he confessed within 48 hours of his arrest, and he has not alleged that he was prejudiced in any other way. Petitioner is not entitled to relief on his Fourth Amendment claim.

## C. Claims Five and Six: Perjured Testimony and Suppression of Evidence

In his sixth claim, Petitioner alleges that the police suppressed exculpatory evidence that the complainant received a sexual assault examination, that there were no signs of physical or sexual trauma, and that the police were notified of these facts. In his fifth claim, Petitioner asserts that two detectives perjured themselves when they testified at trial that they were unaware of the sexual assault examination. Petitioner purports to have new evidence that the victim was, in fact, examined, that the examination was negative for any evidence of sexual or physical trauma, and that the police were notified of the examination.

Petitioner raised his prosecutorial-misconduct claim in his pro se supplemental brief on direct appeal. The Michigan Court of Appeals rejected all of Petitioner's pro se claims for lack of support in the record, for mischaracterizing the record, or for lack of merit and failure to establish prejudice. The Court of Appeals concluded that none of the pro se claims warranted reversal of the convictions.

### 1.    Clearly Established Federal Law

Prosecutors may not deliberately deceive a court or jurors by presenting evidence that they know is false. *Giglio v. United States*, 405 U.S. 150, 153 (1972). Nor may they allow false evidence to go uncorrected when it appears. *Id.* But to prevail on a claim that the prosecutor presented false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

Prosecutors also may not suppress evidence that is favorable to an accused and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The components of a true *Brady* claim are: (1) evidence that is favorable to the accused, either because it is exculpatory or impeaching; (2) suppression of the

evidence by the State, either willfully or inadvertently; and (3) resulting prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"*Brady* . . . applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not, and whether the accused asked for it or not." *Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009) (internal and end citations omitted). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Strickler,* 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Stated differently, "the materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

## 2. Application

Petitioner stated on the first day of trial that, as far as he knew, no sexual assault examination was performed on the victim. (11/2/10 Trial Tr. at 4-5, ECF No. 48-5 at Pg ID 429.) Defense counsel confirmed that there was no report of a physical examination. (*Id*. at 6, Pg ID 429.) The complainant, however, subsequently testified that she was examined by a doctor or a nurse after she gave a

statement to the police. (11/3/10 Trial Tr. at 54, ECF No. 48-6 at Pg ID 495.) In response to this testimony, the lead detective in the case, Jason Ball, testified that he was never made aware of a physical examination performed on the complainant and that the first time he heard about the examination was at trial. (*Id*. at 72, Pg ID 500; 11/4/10 Trial Tr. at 19, ECF No. 48-7 at Pg ID 531.) Detective Andrew Carlson of the Saginaw City Police Department also testified that he was unaware of any physical examination being performed on the complainant. (11/3/10 Trial Tr. at 93-94, ECF No. 48-6 at Pg ID 505.)

Petitioner has acquired information that the complainant was examined on March 1, 2010, that the test results were negative for disease, trauma, or pregnancy, and that the test results were reported to a police officer named Joseph Dutoi. This does not show, however, that Detective Ball or Detective Carlson lied when they denied knowledge of the physical examination. It is possible that they were never personally informed of the examination. Petitioner's perjury claim fails because he has not shown that the detectives' testimony was actually false and that the prosecutor knew the testimony was false.

Petitioner's *Brady* claim also fails. Even if the Court were to assume that the prosecution inadvertently suppressed evidence of the physical examination and that the results of the examination could have been used for impeachment

purposes, the evidence was not material evidence, because Petitioner could have sexually penetrated the complainant without transmitting a disease, physically injuring the complainant, or impregnating her. Therefore, evidence about the physical examination would not have put the whole case in such a different light as to undermine confidence in the verdict. *See Strickler*, 527 U.S. at 280.

To conclude, Petitioner fails to prove the elements of a perjury claim or a *Brady* claim. Thus, habeas relief is not warranted on Petitioner's fifth and sixth claims.

### D.    Claim Seven: Failure to Preserve Evidence

Petitioner contends that the police destroyed or failed to preserve a portion of the videotaped interviews conducted on March 1 and March 3, 2010. Petitioner maintains that the evidence was exculpatory because the videos would have shown that the police threatened, intimidated, and coerced him into making a confession and promised him health care in return for his confession.

Petitioner raised this issue in his pro se supplemental brief in the Michigan Court of Appeals on direct review. The Court of Appeals rejected Petitioner's pro se claims for lack of support in the record, for mischaracterizing the record, or for lack of merit and failure to establish prejudice. The Court of Appeals concluded that none of the pro se claims warranted reversal of the convictions.

The Due Process Clause of the Fourteenth Amendment applies to claims that the government failed to preserve or provide a defendant with evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). As interpreted by *Brady*, the good or bad faith of the State is "irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Id.* The Supreme Court has held that "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which *might* have exonerated the defendant." *Id.* (emphasis added). The failure to preserve potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police. *Id.* at 58.

The record in this case indicates that the failure to preserve videotapes was the result of human error or a technological problem. Detective Jason Ball, the lead investigator, testified that Petitioner's statement to detectives on March 1, 2010, was videotaped on a relatively new digital video recorder. (11/3/19 Trial Tr. at 100-01, ECF No. 48-6 at Pg ID 507.) Detective Ball was able to create a computer file from the videotape. (*Id.*) However, when a secretary attempted to transcribe the audio portion of the interview, there was nothing in the computer file, and it was too late to recapture the information because the life span of the

videotape was only six to seven days. (*Id*.) A second interview of Petitioner was conducted on March 3, 2010, but because the volume was turned down, the audio portion of the interview was not recorded. (*Id*. at 102-03.) Later that day, however, Detective Ball took another statement from Petitioner, and both the audio and visual portions of the statement were successfully recorded. (*Id*. at 103.)

Given this record, Petitioner fails to show that the police destroyed evidence in bad faith. Habeas relief is not warranted on Petitioner's seventh claim.

### E.    Claim Eight: Arrest without Probable Cause

Petitioner asserts that he was arrested without a warrant and on less than probable cause in violation of the Fourth Amendment. Petitioner claims that, even if he was not under arrest when he was asked to report to the police station, he was locked in a small room after arriving at the police station, and his keys and cell phone were confiscated. Also, when he attempted to leave the room, an alarm sounded, and the police responded with weapons. According to Petitioner, he was seized at that point, if not sooner.

Petitioner's Fourth Amendment claim is not cognizable on federal habeas review because he had a full and fair opportunity to raise the claim in state court. *Powell*, 428 U.S. at 494. Even if cognizable, the complainant's allegations that Petitioner sexually abused her was probable cause to arrest Petitioner. *Ahlers v.*

*Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (sex abuse victim's eye-witness statements "are generally entitled to a presumption of reliability and veracity," and law enforcement officers are "entitled to rely on an eye-witness identification to establish adequate probable cause with which to sustain an arrest.")

The Supreme Court, moreover, has stated that, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). In other words, an "illegal arrest or detention does not void a subsequent conviction." *Id*. Therefore, even if Petitioner was arrested on less than probable cause, he is not entitled to have his convictions vacated.

### F.     Claim Nine: Petitioner's Confession

Petitioner asserts that the trial court erred in admitting evidence of his statement to the police. According to Petitioner, the confession was inadmissible because the police coerced him into confessing by delaying his arraignment, denying him medical treatment, depriving him of sleep, and threatening to have his sons placed in foster care. The state trial court held an evidentiary hearing on Petitioner's claim and concluded that Petitioner's statement to the police was voluntary. The Michigan Court of Appeals agreed and held that Petitioner's

confession was freely and voluntarily made under the totality of the circumstances; it was the product of an essentially free and unconstrained choice by defendant. Defendant's will was not overborne, nor was his capacity for self-determination critically impaired. The record reflects that the confession was not the result of intimidation, coercion, or deception. Reversal is unwarranted.

*Ryan*, 819 N.W.2d at 61.

### 1. Clearly Established Federal Law

The test for voluntariness of a confession is whether

the confession [was] the product of an essentially free and unconstrained choice by its maker? If it is, if [the suspect] has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

In determining whether a defendant's will was overborne in a particular case, the [Supreme] Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (internal quotation marks and citations omitted); *see also Jackson v. McKee*, 525 F.3d 430, 433-34 (6th Cir. 2008) (stating that, "[w]hether an interrogation rises to the level of coercion turns on a spectrum of factors: the age, education and intelligence of the suspect; whether the suspect was advised of his *Miranda* rights; the length of the

20

questioning; and the use of physical punishment or the deprivation of food, sleep or other creature comforts").

## 2. The Evidentiary Hearing

At the state-court hearing on Petitioner's motion to suppress his confession, Detective Ruben Vasquez testified that in the late afternoon on March 1, 2010, he was asked to assist the lead detectives in Petitioner's case at the Saginaw police station. (10/28/10 Hr'g Tr. at 6, ECF No. 48-3 at Pg ID 392.) Later, at about 9:45 p.m., Detective Vasquez advised Petitioner of his *Miranda* rights, and Petitioner waived his rights. (*Id*. at 6-7, ECF No. 48-3 at Pg ID 392-93.) Petitioner was offered food and drinks before the interview, and he did not appear to be lacking food, sleep, or medical attention. (*Id*. at 9.) Petitioner mentioned a back injury, but he walked up and down steps a few times during cigarette breaks and did not appear to be disabled. (*Id*. at 11-12, ECF No. 48-3 at Pg ID 394.) Petitioner was coherent, and he told Detective Vaszquez quite a bit about his background. (*Id*.)

Detective Jason Ball testified that he did not participate in the interview on March 1, 2010, and on March 2, 2010, he decided not to interview Petitioner because Petitioner stated that he had slept only two hours during the previous night. (*Id*. at 18-19, Pg ID 395-96.) On March 3, 2010, Detective Ball reminded Petitioner of his *Miranda* rights, and Petitioner acknowledged that the *Miranda*

21

rights still applied to him.  (*Id*. at 21.)  Detective Ball testified that he would not have interviewed Petitioner if Petitioner was not well rested, if he lacked food, or if he needed a cigarette or bathroom break.  (*Id*. at 30, Pg ID 398.)  According to the detective, Petitioner did not appear to be in pain or in need of medication.  (*Id*. at 31-35, Pg ID 399-400.)

According to Detective Ball, he told Petitioner that it would help if he told his story to the prosecutor and Petitioner asked whether he and his wife would lose custody of their sons due to the allegations of sexual misconduct.  (*Id*. at 32-33, 37-38, Pg ID 399-400.)  But by then, Petitioner already had confessed to sexually abusing his daughter, and no promises were made to Petitioner in return for his admissions.  (*Id*. 39-40, Pg ID 400-01.)

Petitioner testified that he was injured in 2002, and that he took a number of medications for pain management.  (*Id*. at 42-43, Pg ID 401-02.)  He explained that he was taken into custody around 2:45 p.m. on March 1, 2010, and that he was given his *Miranda* warnings later that evening.  (*Id.* at 44.)  Sergeant Carlson told Petitioner that the police would make sure he went to a nice place and was given medical care if he admitted the allegations.  (10/29/10 Hr'g Tr. at 6, ECF No. 48-4 at Pg ID 414.)  He did not request or receive any medication while in custody, and on March 2, 2010, he was nauseous, in pain, and shaking.  (*Id*. at 7-9, 11.)

Petitioner agreed to talk to the police because of Sergeant Carlson's promises and his belief that his wife would lose custody of their children if he did not admit the allegations. (*Id*. at 16-18, Pg ID 417.)

The prosecution presented four rebuttal witnesses. Sergeant Craig Irvine testified that Petitioner was booked at the Saginaw County Jail shortly after midnight on March 2, 2010, and because he threatened to kill himself if he went to prison, was placed on suicide watch and kept in an observation cell until March 11, 2010. (11/2/10 Hr'g Tr. at 13-14, ECF No. 48-5 at Pg ID 431.) The cell was lit with florescent lights twenty-four hours a day, and the inmates were served bag lunches. (*Id*. at 15-16, Pg ID 432.) Jail records indicated that Petitioner did not receive any medication until March 4, 2010. (*Id*. at 21-23, Pg ID 433-34.)

Detective Vasquez testified on rebuttal that his only contact with Petitioner was on March 1, 2010, when he read the *Miranda* rights to Petitioner and interviewed Petitioner. (*Id*. at 24, 30, Pg ID 434-35.) He did not make any promises concerning what would happen to Petitioner if he gave a statement. (*Id*. at 24-34, Pg ID 434-36.)

Detective Carlson testified on rebuttal that he and Detective Vasquez interviewed Petitioner from about 9:40 p.m. to about 11:45 p.m. on March 1, 2010. (*Id*. at 35-42, Pg ID 437-38.) He denied making any promises to Petitioner, and he

claimed that he did not threaten Petitioner in any way.  (*Id*. at 35-47, Pg ID 437-40.)

The lead investigator, Jason Ball, testified that he transported Petitioner from the county jail to the Saginaw Police Department on March 3, 2010, and that he did not promise Petitioner anything or threaten Petitioner.  (*Id*. at 51-52, 54, Pg ID 441.)  He did tell Petitioner that he would take the information he had and Petitioner's statement to the prosecutor's office and that the prosecutor would make the final decision about what was to be done.  (*Id.* at 54, Pg ID 441.)

Defense counsel argued at the conclusion of the hearing that the police officers' conduct, Petitioner's poor health, and the conditions at the jail had a coercive effect on Petitioner, such that his ability to discern and apply his rights was overcome.  (*Id*. at 61-63, Pg ID 443-44.) The trial court was not persuaded by Petitioner's claim that the police improperly obtained his statement, however.  (*Id*. at 67, Pg ID 445.)  The trial court concluded from the totality of the circumstances that Petitioner's statement was voluntary and that he had made a valid waiver of his constitutional rights.  (*Id*. at 66-67, Pg ID 444-45.)

### 3.    Discussion

Petitioner was a 37-year-old man who waived his *Miranda* rights on March 1, and acknowledged his rights on March 3.  Further, according to the trial court,

during his videotaped interview Petitioner appeared to be coherent and oriented.
(*Id*. at 67-69.)  He did not complain of pain, discomfort, or lack of sleep, and he
did not exhibit any pain, discomfort, or confusion.  (*Id*.)  He provided direct and
specific answers to questions and, with little prompting, went into specific details
about his actions with his daughter.  (*Id*. at 69.)  Petitioner also provided
clarification, background information, and explanations for his behavior, while
also acknowledging that it was wrong.  (*Id*.)

Although Petitioner's testimony at the evidentiary hearing differed from that
of the police officers, the trial court found incredible Petitioner's claim that he was
in pain and concerned about his wife's parental rights.  (*Id*. at 68-69.)  The court
said that nothing in the videotape suggested Petitioner was somehow coerced or
that his statement was involuntary.  (*Id*.)  The trial court's credibility determination
is entitled to deference, because this Court, sitting in habeas corpus, has "no
license to redetermine credibility of witnesses whose demeanor has been observed
by the state trial court, but not by [this court.]"  *Marshall v. Lonberger*, 459 U.S.
422, 434 (1983).

Furthermore, the record indicates that Petitioner's capacity for self-
determination was not impaired and that his will was not overborne.   Therefore,
the state appellate court's conclusion that Petitioner's confession was freely and

voluntarily made was neither contrary to, nor an unreasonable application of, *Bustamonte*. The Court therefore declines to grant relief on Petitioner's challenge to the admission of his confession in evidence.

### G. Claim Three: Ineffective Assistance of Trial Counsel

Plaintiff alleges that trial counsel was ineffective for failing to investigate his case and develop a complete defense. Specifically, Petitioner contends that trial counsel should have: (1) moved to suppress evidence of Petitioner's confession on Fourth Amendment grounds; (2) interviewed the victim to ascertain her version of the facts; (3) obtained and investigated the complainant's school records or interviewed her teachers; (4) objected to the admission of Petitioner's videotaped interview with the police on the ground that the police tampered with the videotape; (5) requested funds for appointment of expert witnesses; and (6) objected to the prosecutor's use of perjured testimony. Petitioner raised his claim about trial counsel in his pro se supplemental brief on direct review, but the Michigan Court of Appeals determined that the claim did not warrant reversal of Petitioner's convictions.

#### 1. Clearly Established Federal Law

The "clearly established Federal law" here is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must demonstrate "that counsel's

performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. The "deficient performance" prong of this test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693). In a habeas case, moreover, review of an ineffective-assistance-of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S. Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. --, --, 134 S. Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at --, 134 S. Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam).

## 2. Application

### i. Failure to Object to the Confession on Fourth Amendment Grounds

Petitioner asserts that his trial counsel should have argued that his confession arose from a violation of the Fourth Amendment. Petitioner's two Fourth Amendment claims lack merit, however. As discussed earlier, the complainant's allegations provided probable cause to arrest Petitioner and the delay in arraigning Petitioner did not prejudice him. An objection to Petitioner's arrest or the delay in his arraignment would have been futile, and "the failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir.), *cert. denied sub nom. Altman v. Brewer*, 137 S. Ct. 76 (2016).

### ii. Failure to Interview the Complainant

Next, Petitioner alleges that defense counsel should have interviewed the complainant to ascertain her version of the facts. But the complainant's version of the facts should have been obvious to Petitioner and his attorney from the complainant's allegations and the charges against Petitioner. In fact, Petitioner admitted at trial that the police had informed him in detail what the complainant had said about him. (11/4/10 Trial Tr. at 39, 65-66, ECF No. 48-4 at Pg ID 556, 562.) Therefore, Petitioner fails to demonstrate that trial counsel's failure to

interview the complainant amounted to deficient performance or that he suffered prejudice as a result.

### iii. Failure to Obtain the Complainant's School Records

Petitioner contends that defense counsel should have obtained and investigated the complainant's school records or interviewed her teachers. Petitioner maintains that, if defense counsel had done this, he would have learned that the complainant had falsely accused students of sexual misconduct, that she had threatened to do whatever it took to be sent back to Mississippi, and that she had a propensity to lie, steal, and manipulate.

Defense counsel informed the trial court on the first day of trial that he had attempted to subpoena the complainant's school records. (11/2/10 Trial Tr. at 8, ECF No. 48-5 at Pg ID 430.) Even without the records, defense counsel attempted to undermine the complainant's allegations during his cross-examination of her with the information Petitioner claims the records would have revealed. He elicited testimony that she did not like living in Saginaw, Michigan, wanted to return to Mississippi, and was allowed to return after she informed her school counselor that her father was sexually abusing her. (11/3/10 Trial Tr. at 39, ECF No. 48-6 at Pg ID 491.) Defense counsel also elicited the complainant's testimony that Petitioner and her stepmother subjected her to more discipline than her mother.

(*Id*. at 40.)  The implication of defense counsel's questions was that the complainant had fabricated the charges in order to be sent back to Mississippi to be with her mother.

Defense counsel attempted to undermine the complainant's credibility in other ways.  He pointed to discrepancies between the complainant's trial testimony and her statement to her school counselor or other people, and he asked her to elaborate on a prior statement in which she stated that, on several occasions, her half-brothers had come into the bedroom when she and her father were having sex.  (*Id*. at 42-53, Pg ID 492-95.)

Furthermore, Petitioner testified that the complainant had problems at school and that, according to her teachers, she was alleging that boys were fooling around with her in school.  (11/4/10 Trial Tr. at 32, ECF No. 48-8 at Pg ID 554.)  Petitioner also testified that the complainant had said she was doing whatever it took to be sent back to Mississippi.  (*Id*.)

Because Petitioner was able to testify about the complainant's behavior at school, and because defense counsel effectively cross-examined the complainant, defense counsel's alleged failure to obtain the complainant's school records did not prejudice the defense.  Moreover, Petitioner has not overcome the presumption that, under the circumstances, defense counsel's manner of refuting the

complainant's allegations " 'might be considered sound trial strategy.' "
*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### iv. Failure to Argue that the Police Tampered with Evidence

Petitioner contends that defense counsel should have objected to the admission of his videotaped interview with the police on the ground that the police had tampered with the videotape. Defense counsel was aware of why Petitioner might be "justifiably suspicious" of the police officers' handling of the videotapes: the videotape in which Petitioner denied involvement in the crimes was unavailable. (11/2/10 Trial Tr. at 7, ECF No. 48-5 at Pg ID 430.) But the record indicates that the digital recording equipment was relatively new to the police and that the lack of audio and visual recordings for the first and second interviews was due to technological problems with the system or human error. There was no evidence that the police intentionally deleted or destroyed the videotapes.

Furthermore, Detective Ball and Detective Carlson both testified at trial that Petitioner denied the charges in his first interview. (11/4/10 Trial Tr. at 23, ECF No. 48-7 at Pg ID 532; 11/4/10 Trial Tr. at 70, 73, ECF No. 48-8 at Pg ID 563-64.) And it appears that, at some point during the second interview, Petitioner confessed to the crimes. Therefore, defense counsel's failed to object to missing

videotapes for the first and second interviews did not amount to deficient performance and did not prejudice the defense.

### v.      Failure to Request Funds to Obtain Expert Witnesses

Next, Petitioner contends that defense counsel should have requested funds for appointment of an expert witness to explain the effect that his withdrawal from medications might have had on him during the police interrogations.  Petitioner testified about the effect that the lack of medication had on him, however. (11/4/10 Trial Tr. at 42, 49, ECF No. 48-8 at Pg ID 556, 558.)  Moreover, according to the trial judge, in his videotaped confession, which the jury also viewed, Petitioner was coherent and oriented and did not seem confused. According to the trial judge, Petitioner also did not appear to be in any pain or discomfort during the videotaped confession.  Therefore, defense counsel was not ineffective for failing to request or obtain an expert in pharmacology.  The expert, in all likelihood, would not have persuaded the jury that Petitioner's withdrawal from medication caused him to confess to the crimes.

Petitioner also contends that defense counsel should have requested funds to obtain a computer expert to determine whether the police had tampered with the videotapes of their interviews with Petitioner.  The police, however, provided a plausible reason for the lack of a good audio and videotape of the first and second

interviews, and Petitioner acknowledged at trial that he had confessed to the crimes during the third interview. Thus, there was no basis for investigating whether the police tampered with the videotapes, and defense counsel's failure to obtain a computer expert did not prejudice Petitioner.

### vi. Failure to Object to Alleged Perjury

In his sixth and final claim about defense counsel, Petitioner alleges that defense counsel should have objected to the detectives' perjured testimony that they were unaware of the physical examination performed on the complainant. As explained above, however, there is no evidence that the detectives were aware of the examination. Because Petitioner's underlying claim of perjury lacks merit, defense counsel was not ineffective for failing to object to the detectives' testimony as being false. *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).

In conclusion, defense counsel's omissions did not amount to deficient performance, and the allegedly deficient performance did not prejudice the defense. Therefore, the state appellate court's conclusion – that Petitioner's claim about defense counsel provided no rational basis for reversal – was not contrary to, or an unreasonable application of, *Strickland.*

### H. Claim Two: Ineffective Assistance of Appellate Counsel

Petitioner alleges that his appellate attorney was ineffective because the attorney failed to raise issues regarding (1) the delay in Petitioner's arraignment, (2) the complainant's sexual assault examination, (3) the destroyed videotape of his interview with the police, and (4) trial counsel's ineffectiveness. Petitioner first raised his claim about appellate counsel in his motion for relief from judgment. The trial court adjudicated the claim on the merits and concluded that appellate counsel was not ineffective. The trial court noted that an appellate attorney's decision to winnow out weaker arguments and focus on those more likely to succeed was not evidence of ineffective assistance and that Petitioner failed to show he was prejudiced by counsel's failure to raise all his claims on appeal.

The Supreme Court has said that an indigent defendant has no right to compel his appellate attorney to make every nonfrivolous argument suggested by the defendant. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To prevail on his claim, Petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694). Tactical choices about which claims to raise on appeal "are properly left to the sound professional judgment of

counsel. . . ." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52).

Petitioner's claim about appellate counsel fails because his underlying claims lack merit. As explained above, the delay in Petitioner's arraignment and the lack of any evidence concerning the complainant's sexual assault examination did not prejudice Petitioner. Additionally, the record does not support the contention that the police intentionally destroyed videotapes of their interviews with Petitioner, and trial counsel's omissions did not rise to the level of ineffective assistance. Consequently, appellate counsel was not ineffective for failing to raise these issues on appeal.

Even if counsel's performance was deficient, the deficient performance did not prejudice Petitioner because he raised the same, or similar, issues in his supplemental pro se brief, which the Michigan Court of Appeals rejected for lack of merit. There is not a reasonable probability that Petitioner would have prevailed on appeal if his attorney had raised the issues. The Court's inquiry, therefore, "is at an end; by definition, appellate counsel cannot be ineffective for a failure to

raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### I.     Claim Ten: Cumulative Errors

Petitioner contends that the sheer number of constitutional errors in his case combined to deprive him of a fair trial. Post-AEDPA, however, this contention is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). The Court therefore declines to grant relief on Petitioner's tenth claim.

### J.     Claim Eleven: Actual Innocence

Petitioner claims to be actually innocent of the crimes for which he is incarcerated. He contends that the physical examination of the complainant showed no evidence of a crime and that the only inculpable evidence against him was his coerced confession and his daughter's "coached" testimony.

Claims of actual innocence generally do not "state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*.

In capital cases, the Court may assume that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. But this is not a capital case, and even if it were, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*

"[W]hatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *House v. Bell*, 547 U.S. 518, 555 (2006). The complainant's testimony and Petitioner's own admissions to the police supported the jury's verdict, and Petitioner has not presented the Court with any new and reliable evidence to support his claim of innocence. Therefore, Petitioner's freestanding claim of actual innocence is not cognizable in this habeas corpus case. *Herrera*, 506 U.S. at 400; *Cress*, 484 F.3d at 854.

### K.     Claim Twelve: "Other Issues"

In his twelfth and final "claim," Petitioner reserves the right to amend his petition to raise additional issues. Petitioner, however, has not sought to amend his petition to add any additional claims. Thus, Petitioner's twelfth claim is not a basis for relief.

## V.  CONCLUSION

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  The state courts' decisions clearly were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  Accordingly, the habeas petition is denied.

## VI.  CERTIFICATES OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.

The Court therefore declines to issue a certificate of appealability.  Nevertheless, because Petitioner was granted leave to proceed in forma pauperis in this Court, he may proceed in forma pauperis on appeal without further authorization.  Fed. R. App. P. 24(a)(3)(A).

For the reasons given above,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 16, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 16, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager